WILLIAM HEPWORTH v. THE STATE.

No. 11820. Delivered November 13, 1929.
Reported in 21 S. W. (2d) 680.

The opinion states the case.

*Foster & Fullington* of Amarillo, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for felony theft; punishment, four years in the penitentiary.

This conviction was for the theft of a lady's coat from a Mr. Watner in Amarillo, Texas. There are six bills of exception but one of which we deem it necessary to discuss at any length. Same complains of the reception in evidence of testimony that another

coat wrapped in a bundle with the Watner coat when found where appellant had put it a short time after the theft,—was also a stolen coat. The facts show that Watner's store and that of Moore-Poston were in the same block on the same street and three or four doors apart, at the time of this theft. Between 11:30 and 12:00 o'clock A. M. appellant with two women went into Watner's store. One of the women asked to look at some dresses. She went with a saleswoman to the back of the store, leaving appellant and the other woman near the front, where the ladies' coats were. The three left said store together. The saleswoman referred to was a witness for the State, and on cross-examination of her the defense drew out that both of said women had on long loose coats when in the store; that appellant had on an ordinary suit without any overcoat, and that the witness saw appellant leave the store, saw his hands, his body; in fact the whole man, and saw nothing indicating that he had anything in his possession when he left the building. Within twenty minutes thereafter the coat in question was missed, and Mr. Watner went on the street to look for appellant and his party. Watner testified that between 12:30 and 1:00 o'clock he saw the three on a street and appellant was carrying a bundle wrapped in brown paper. He followed them. They entered a building, and when Watner got to the door they were going up in an elevator. He waited, and in about twenty minutes they came out. One of the women was carrying said bundle. They went up the street, Watner following. The woman passed the bundle to appellant who went into Edwards Studio with same, but immediately came out without it. Watner went in and found said bundle behind the door of the studio. On examination it was found to contain the Watner coat and another, later identified as one taken from Moore-Poston on the same day. The State was permitted to prove, over objection, that the Moore-Poston coat was taken without the consent of the owner.

The case was submitted upon a charge on circumstantial evidence, also upon an application of the law of principals in which the jury were told that the mere presence when another commits a crime, is not enough, and that in order to constitute one a principal, he must have knowingly and intentionally done some overt act such as was described in the preceding part of the charge, in furtherance of the purpose of those actually committing the offense. The jury were also told that if appellant was found in possession of any other property than that described in the indictment, they could not consider such possession for any purpose save to aid them, if it did so, in

determining the appellant's purpose in respect to the property described in the indictment; also that he could not be convicted, if at all, for any offense concerning other property than that described in the indictment. The contention here is that the court erred in letting the State prove that Moore-Poston's coat was also stolen.

No one saw appellant or any other person take any coat. The circumstances tend to negative his manual taking of the Watner coat, but support the theory of a taking of same by one of the women. Appellant seems to have had no way of concealing as large an object as a lady's coat when he left the Watner store. If he did not manually take it, then the question arises as to whether he knew at the time it was taken that his companion was engaged in such criminal enterprise,—was the taking of a particular coat the result of a conspiracy on the part of appellant and his companions to steal coats or other property generally; and did he know the bundle had by him on the street contained the alleged stolen coat? Proof shedding light on such theories would be plainly admissible, and especially so in a case dependent on circumstantial evidence. Such proof might be made by witnesses who knew of the forming or existence of such conspiracy on the part of appellant and his companions; or it might be made by the confession of said parties; or it might be as strongly established by proof of the continuing conduct of the parties, such as their acting together in a particular instance, or in the commission of a number of closely connected and related crimes. Hence the rules laid down by all of the authorities, viz.: that when necessary to establish identity in developing the res gestæ of a given crime, or in making out the guilt of the accused by a chain of circumstances, or when the intent with which a particular act is done is the gist of the offense, or when the knowledge or intent of the party as to some material fact, although same be collateral, has some bearing on the main fact in issue,—in all such cases proof that the accused was found in possession of other property taken at or about the same time and from the same neighborhood as the alleged stolen property, will be held admissible. It is not thought by the writer that any well considered case can be found on such facts which holds otherwise. Analysis of certain cases referred to as holding a contrary view, easily and clearly differentiate them.

It must be borne in mind however, as we briefly discuss the cases referred to by appellant, that in the instant case the fact of a conspiracy was provable; also that the theory of principals was relied on; also that the acting together of appellant and the women was an

inference to be determined from all the facts; also that at some time between 11:30 A. M. and 1:00 P. M. these two coats were taken from their owners in adjacent stores and that both were found a few moments after being taken wrapped in a bundle had and concealed by appellant. True, he is presumed innocent and might have been innocently carrying a bundle whose contents were unknown to him, but the question is would this presumption not be much weakened as to the innocence of the accused by proof that both coats in the bundle were stolen? So also close attention should be given to the facts of the cases referred to by appellant, for upon them must rest correct decisions as to the legal principles applicable and the rules governing. The following are the cases:

Ivey v. State, 43 Tex. 425. Ivey was Ezelle's hired man. He and Ezelle were seen driving a bunch of cattle, not identified, on July 1st. Next morning the alleged stolen cattle were found in Ezelle's pasture, and the morning after this some of the cattle were found in Ezelle's butcher yard in the city of Austin and some at another place to which they had been driven by both men but sold by Ezelle. The proof showed that Ivey had no interest in Ezelle's business. The testimony of the finding of other cattle in Rutherford's (?) pasture was objected to. Our Supreme Court said:

"To make this evidence admissible as against Ivey it must be shown that the stolen stock and the steer in question were taken at the same time, and formed but one transaction, and that Ivey's acts were such as to show a guilty connection with Ezelle when it was so taken or WHILE IT WAS UNDER HIS CONTROL."

While the rule thus stated omits exceptions well settled by later cases, and is in contravention of the rule stated in many of the later cases, yet,—as applicable to the instant case, it will be noted that the opinion holds that the evidence would be admissible if Ivey's acts "show a guilty connection with Ezelle when the property was taken, or *while it was under his control.*" In other words,—proof of the theft of another coat would be admissible if Hepworth's acts showed a guilty connection with the two women when Watner's coat was taken or while it was in Hepworth's control. Such holding plainly supports the admissibility of the testimony under discussion in the instant case. Every movement of appellant appearing in the record showed his guilty connection with the women both when Watner's coat was taken and when found in the bundle had by appellant on the street.

Bowman's case, 70 Texas Crim. Rep. 22. On its facts this case is as different from the instant case as is daylight from darkness. Three stores were burglarized, one January 7th, one March 23rd, and one April 25th. Judge Harper in the opinion says that proof of the burglaries of the other stores was not res gestæ of the one on trial. He quotes two rules upon authority of many cases cited which cases involve wholly different facts from the one before us, hence call for the announcement of a totally different principle. Judge Harper ignores the rule laid down in Gilbraith v. State, 41 Tex. 569, which emphatically says such evidence as that under discussion is admissible when it aids in making out the guilt of the accused by a chain of circumstances connected with the crime for which he is on trial. He overlooked the rule announced in Persons v. State, 3 Texas Crim. App. 244, which lays down as an exception to the rule excluding collateral offenses those cases in which the knowledge or intent of the accused as to some matter which, though apparently collateral, has bearing on the main fact in issue, appears. Judge Harper's failure to state the law applicable to such other exceptions probably arose from the lack of its further application in the Bowman case, supra. In the instant case the accused was not only in possession of the bundle containing the alleged stolen property as well as the other stolen coat when seen on the street, but he was actually removing both of them from where they had just been taken, which brings the point at issue clearly within the rule of res gestæ; also appellant's guilty knowledge that the stolen Watner coat was in the bundle, was an issue which was made stronger against him by proof that same contained another coat stolen a few moments before; further, the instant case was wholly on circumstantial evidence. The Bowman case, supra, differing so wholly in its facts, called for announcement of different principles and is not at all in point.

Williams v. State, 24 Texas Crim. App. 412, is also cited. A pistol taken sometime in the fall of 1886 was found along with some three hundred dollars worth of other stolen property in December 1886, in Williams' house. A number of witnesses were permitted to testify that property belonging to them was found in said house in December, but when same was taken they had no knowledge, nor is there the slightest showing that these other properties were taken either at or about the same place, or at or about the same time, as the alleged stolen pistol. The case was properly reversed, but the following significant and apt statement of the law is made by Judge. Willson in the opinion:

"For the purpose of establishing identity in developing the res gestæ, or to prove guilt by circumstances connected with the theft, or *to show the intent with which the accused acted with respect to the property for which he is on trial,* it is competent for the State to prove the theft of other property at the same time and place of the theft of the property in question. (Willson's Texas Crim. Laws, sec. 1295.)"

Each of the three reasons thus so clearly stated, in the opinion of the writer, supports the admissibility of the proof in the instant case on its facts that the Moore-Poston coat was stolen. The intent with which Hepworth acted *with respect to the bundle he was carrying,* i. e. was he merely intending to carry a bundle of ladies' garments to accommodate his lady friends when seen in possession thereof by Watner,—or was he acting with them in the purpose and intent to fraudulently acquire stolen property? Reason and common sense would reply that while an innocent person might be thus imposed upon in the one instance by having one article handed him for carriage by his friend, such presumption would grow weaker and weaker with each succeeding place visited, if in each such other place stolen articles were added to his bundle.

Hill v. State, 44 Texas Crim. Rep. 603, is also cited. The case was reversed because upon its trial of Hill for burglary of Tillman's house, the State was permitted to prove a prior burglary of Patton's house. Not only is it stated in the opinion that the two offenses were entirely separate and distinct, but further it appears that the accomplice testified that the latter burglary was not in contemplation when the first was committed. The court also stated that neither burglary was res gestæ of the other. There is no showing other than from the testimony of the accomplice that two men were even implicated in such burglaries, nor was there any question of the knowledge or intent of the accused with respect to any property found in his possession taken from the house first burglarized which might thus identify him as one who burglarized the house charged in the indictment. Nor was the case one on circumstantial evidence, nor is there mention of this exception to the collateral offense rule, in the opinion. In fact the soundness of the opinion as applicable generally, is brought further in question by the following quotation therefrom:

"It is not admissible to prove one crime, and then prove independent and distinct crimes other than the one on trial, for any purpose,

unless it be a part of the res gestæ, serve to identify defendant, or to prove system of sales, as in local option cases."

That there are many exceptions to the general rule excluding proof of collateral offenses which are not included in the above quotation, is manifest.

Welhousen v. State, 30 Texas Crim. App. 623, is cited. Nothing in this case makes known the time, place or manner of the collateral thefts, proof of which was objected to. Without such knowledge, generalization in citation of precedents is always dangerous. We find this statement in the opinion:

"To serve any purpose the proof must show that the other animals or property were taken at least about the same time, and from the same place, or so near thereto as to constitute the same transaction. .... If the different offenses be so closely connected that proof of one necessarily discloses the other, the State would have the right to discloses both to the extent of their necessary connection."

While the attention of the judge who wrote in the above case was not drawn to the rule adhered to in all well considered cases, viz.: the circumstantial evidence rule, and while from the quotation above we conclude that the facts were wholly different from those now before us, and no question of principal or conspiracy was involved, yet we deem the opinion, as far as applicable, to be in line with our view, and certainly it is not opposed thereto.

Conley v. State, 21 Texas Crim. App. 495, is also cited. Conley was charged with theft of a saddle, bridle and blanket. These articles, after disappearance, were found in some fodder in Chapman's loft, rented by Conley. The State proved over objection that a horse was found in Chapman's stable yard where it had been tied four days in plain view and that this horse was stolen. It was not shown that appellant tied the horse where found, or that he had anything to do with said horse further than that it was found in a lot surrounding a stable whose loft appellant had in control. In properly reversing the case for error in admitting evidence that the horse was stolen Judge Hurt makes the same statements of the law as are found in Judge Willson's opinion in Williams' case, supra, and with which we are in entire accord. He then reasons out the application of these rules to the facts before him, and the writer humbly observes that therein rests the crucial test of the soundness of all judicial decisions. Judge Hurt says that there is no evidence showing that said horse was taken at the same time or place as the saddle, etc., hence there is no application of the rule of res gestæ;

nor did the fact that said horse was found in the lot tied, tend in any manner to identify or develop the saddle transaction. He then proceeds to say:

"Does the fact that this horse was hitched in the lot, under the circumstances surrounding it, constitute a fact or link in the chain of facts which tend to connect the defendant with the theft of the property named in the indictment? If so, it is most evidently competent, for if a fact be competent evidence, though it tends to prove another offense, it is no objection to the admission of such fact because of such tendency. The State is entitled to all criminative facts, and the defendant will not be heard to object to the competency of a fact simply because it proves another offense. The question is whether the proposed fact be relevant; if so, it should be admitted. Just what facts are relevant can never be enumerated, because a fact is relevant because other facts are in evidence."

How pertinent in its application to the instant case. Certainly the fact that in a bundle had by a man walking along the street, is found a woman's coat stolen a few moments before,—tends to shed light on whether he knew of and was a party to the theft of another coat also found in said bundle and stolen a few moments before the other one, and from an adjacent store. Certainly this does shed light upon and is relevant under both the res gestæ rule and as a link in a chain of facts tending to show appellant a conspirator with the women and to connect him with the theft of the coat charged in the indictment, which was found in said bundle. Suppose the facts before Judge Hurt in the Conley case, supra, had been as were the facts in the case of Jones v. State, 14 Texas Crim. App. 85, decided by the same great judges,—White, Hurt and Willson. Jones was indicted for the theft of a horse from one Cameron taken on the night of February 7th. Mr. Hamby and Mr. Moore each lived about a mile and a half from Cameron. On the same night Hamby lost a mare and Moore a saddle. A day or two later appellant and another man were found in possession of said animals and saddle. Upon the trial of Jones for the theft of Cameron's horse, proof was admitted over objection of the theft of Hamby's mare and Moore's saddle the same night. This court reciting the facts and stating as the law that when necessary to establish identity in making out the res gestæ, or in making out the guilt of the party by circumstances connected with the alleged theft, or to explain the intent with which the accused may have acted, upheld the admission of the testimony referred to and affirmed the case. Nor was there any testimony

for the defense of mistake or claim of right, etc. etc. This case was expressly upheld in Kelly v. State, 18 Texas Crim. App. 268, and in Smith v. State, 21 Texas Crim. App. 104, where the rule is stated thus:

"It is competent for the State to prove that other property was stolen at or about the same time, and in the same neighborhood from which that in question was stolen, when necessary to establish identity in developing the res gestæ, or in making out the guilt of the defendant by circumstances connected with the alleged theft, or to explain the intent with which the accused acted with respect to the property, for the theft of which he is being tried."

Approving the same rule Trimble v. State, 66 Texas Crim. Rep. 207 cites many authorities, among others McCall v. State, 14 Texas Crim. App. 353, where the admission of evidence of the taking of another animal from the same range as the one charged in the indictment, about the same time, was upheld. The same rule is adhered to in McGlasson v. State, 37 Texas Crim. Rep. 622, citing many authorities. In Smith v. State, 21 Texas Crim. App. 121, we upheld the admission of testimony that on the day after the alleged theft parties claimed to be co-conspirators with appellant in said theft were seen driving certain other cattle than those described in the indictment in the direction of the place where all the parties involved were later seen in possession of a herd of cattle which included those charged to have been stolen. It is said in the opinion that proof tending to show the theft of the herd, tended to show the theft of the particular animal described in the indictment. This is analogous to the principle in the instant case that proof tending to show the theft of all the property found in the bundle would certainly tend to connect appellant with theft of one of the coats in the bundle. It is also held in the case under discussion that where the question of a conspiracy is involved, the State is not relegated to facts transpiring before the commission of the offense, to support the theory of conspiracy, but may prove other facts occurring subsequent if pertinent. We think we have correctly analyzed all of the cases referred to and that none of them support any view opposed to our belief that the testimony in question was admissible. In the instant case the chief circumstance against appellant was the fact that within an hour after its loss, he was found on the street carrying a bundle in which, wrapped with another coat, was the alleged stolen property. The contents of the bundle were not visible to the carrier. He asserted no ownership or right of possession to said bundle. His knowledge

of its contents was an inference more or less strong as related to and made pertinent by other circumstances. Bundle carrying is no crime, but proof that such bundle contained stolen property recently taken from a place where the carrier and his companions were together, tend strongly to support the theory of principals, and of conspiracy and to bring knowledge of the contents of the bundle home to appellant; and if in said bundle it be proved that there is other stolen property taken from the same neighborhood and about the same time as the property in question in this case, certainly the chain of pertinent testimony would grow stronger and would meet the test of exclusion, and lead the minds of the jury to believe beyond a reasonable doubt that the three parties implicated were acting together and were co-conspirators in the taking of the coat described in the indictment.

We are of opinion that none of the other matters complained of in the record call for any discussion.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*